IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|                    |   |                                 |
|--------------------|---|---------------------------------|
|                    | : |                                 |
| GLENN R. BUTLER    |   |                                 |
|                    | : |                                 |
| v.                 | : | Civil Action No. DKC 2005-0435  |
|                    | : |                                 |
| VISIONAIR, INC.    |   |                                 |
|                    | : |                                 |

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this employment compensation dispute is the motion of Defendant VisionAIR, Inc. ("Defendant"), to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) or, in the alternative, for summary judgment under Fed.R.Civ.P. 56. Paper no. 8. Defendant contends that Plaintiff has failed to state a claim on which relief may be granted because (1) the claims are barred by the applicable statute of limitations and (2) Defendant has paid Plaintiff all of the money he is owed. In the alternative, Defendant asserts there is no genuine issue as to material fact and Defendant is entitled to judgment as a matter of law. The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, the court grants in part Defendant's motion to dismiss and denies Defendant's motion for summary judgment.

**I.   Background**

On January 11, 2005, Plaintiff Glenn R. Butler ("Plaintiff") filed a complaint in the Circuit Court for Montgomery County alleging that his former employer, VisionAIR, Inc., owed him commissions for software license sales he made during his employment with Defendant. The complaint asserts that Plaintiff worked for Defendant from March 29, 1999, until March 19, 2001.[1] Plaintiff alleges that he was owed commissions at the time of his separation and that additional sales invoices have been paid to VisionAIR for which he is due commissions.[2] He asserts claims under the Maryland Wage Payment and Collection Law, Md. Code Ann., Lab. & Empl. §§ 3-502 and 3-505 (1999) and breach of his employment agreement with Defendant.

The dispute primarily arises from a provision in the employment contract between Plaintiff and Defendant in which Defendant states that it will not pay sales commissions more than six months after employment terminates. Relying on the

---

[1] Subsequent papers state that Plaintiff's last day of employment was March 23, 2001. Paper no. 8, at 4. This discrepancy is immaterial for analysis purposes.

[2] The parties agree that when Plaintiff's employment terminated on March 23, 2001, his net "commission balance" was $55,404.74. Paper no. 8, Ex. 5. The commission balance represents the potential income that Plaintiff would receive if Defendant collected payments on the sales contracts attributable to Plaintiff. The parties also agree that after Plaintiff's employment terminated, Defendant paid Plaintiff commissions totaling $10,357.19. Paper no. 8, Ex. 3; Paper no. 15. Thus, commissions totaling $45,047.55 remain in dispute.

2

contract, Defendant contends that it does not have to pay commissions on sales collected after September 23, 2001. Plaintiff argues that the six-month limit is void as against public policy, and that Defendant is liable for payments collected beyond September 23, 2001.  Although not entirely clear, he appears to concede that, due to the statute of limitations, his claims for commissions are based on payments collected on or after November 1, 2001.  The parties also disagree on whether Plaintiff actually earned the commission, as defined under Maryland law.  However, the latter argument was raised for the first time in Defendant's Reply to Plaintiff's Response, so the court will not address the issue at this time.[3]

## II.  Standards of Review

### A.  Motion to Dismiss

The purpose of a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint.  *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  Accordingly, a Rule 12(b)(6) motion ought not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46

---

[3] Accordingly, Plaintiff's Motion for Leave to File Surreply, Paper no. 17, is moot and therefore denied.

(1957).   Except in certain specified cases, a plaintiff's complaint need only satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).   Rule 8(a)(2) demands only "that the pleaded claim afford 'the opposing party fair notice of the nature and basis or grounds of the claim and a general indication of the type of litigation involved.'" *Labram v. Havel,* 43 F.3d 918, 920 (4th Cir. 1995) (quoting *Burlington Indus. Inc. v. Milliken & Co.,* 690 F.2d 380, 390 (4th Cir. 1982)); 5 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1215, at 172-73 (3rd ed. 2004).

In its determination, the court must consider all well-pled allegations in a complaint as true, *see Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff.  *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)).  The court may also consider documents referred to in the complaint and relied upon by plaintiff in bringing the action.  *Biospherics, Inc. v. Forbes, Inc.*, 989 F.Supp. 748, 749 (D.Md. 1997) (citing *Cortec Indus., Inc. v. Sum*

*Holding, L.P.*, 949 F.2d 42, 46-48 (2nd Cir. 1991)).  The court must disregard the contrary allegations of the opposing party. *See A.S. Abell Co. v. Chell*, 412 F.2d 712, 715 (4th Cir. 1969). The court need not, however, accept unsupported legal allegations, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

The statute of limitations is an affirmative defense that a party typically must raise in a pleading under Fed. R. Civ. P. 8(c) and is not usually an appropriate ground for dismissal. *See Eniola v. Leasecomm Corp.*, 214 F.Supp.2d 520, 525 (D.Md. 2002); *Gray v. Mettis*, 203 F.Supp.2d 426, 428 (D.Md. 2002). However, dismissal is proper "when the face of the complaint clearly reveals the existence of a meritorious affirmative defense." *Brooks v. City of Winston-Salem, North Carolina*, 85 F.3d 178, 181 (4th Cir. 1996). *See* 5B Wright & Miller, *supra,* § 1357, at 714 ("A complaint showing that the governing statute of limitations has run on the plaintiff's claim for relief is the most common situation in which the affirmative defense appears on the face of the pleading and provides a basis for a motion to

dismiss under Rule 12(b)(6)."). The court may consider documents referred to in the complaint and relied upon by plaintiff in bringing the action. *Biospherics, Inc. v. Forbes, Inc.*, 989 F.Supp. 748, 749 (D.Md. 1997) (citing *Cortec Indus., Inc. v. Sum Holding, L.P.*, 949 F.2d 42, 46-48 (2nd Cir. 1991)).

## B.   Motion for Summary Judgment

Where the parties present matters outside of the pleadings and the court considers those matters, the motion is treated as one for summary judgment. *See* Fed.R.Civ.P. 12(b); *Gadsby by Gadsby v. Grasmick*, 109 F.3d 940, 949 (4th Cir. 1997); *Paukstis v. Kenwood Golf & Country Club, Inc.*, 241 F.Supp.2d 551, 556 (D.Md. 2003). It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1987). The moving

6

party bears the burden of showing that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law.  *See* Fed.R.Civ.P. 56(c); *Catawba Indian Tribe of South Carolina v. State of S.C.*, 978 F.2d 1334, 1339 (4ᵗʰ Cir. 1992), *cert. denied*, 507 U.S. 972 (1993).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion.  *See U.S. v. Diebold*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4ᵗʰ Cir. 1985).  A party who bears the burden of proof on a particular claim must factually support each element of his or her claim.  "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial."  *Celotex Corp.*, 477 U.S. at 323.  Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 256; *Celotex Corp.*, 477 U.S. at 324. However, "[a] mere scintilla of evidence in support of the nonmovant's position will not defeat a motion for summary judgment."  *Detrick v. Panalpina, Inc.*, 108 F.3d 529, 536 (4ᵗʰ Cir.), *cert. denied*, 522 U.S. 810 (1997).  There must be

"sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

## III. Analysis

### A.   Motion to Dismiss

Defendant argues that Plaintiff's claims are time barred because he filed his claim more than three years and nine months after his employment with Defendant terminated.  Under Maryland law, a civil action "shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced."  Md. Code. Ann., Cts. & Jud. Proc. § 5-101 (2002). Since 1981, § 5-101 analysis has been subject to the "discovery rule," which states that "the cause of action accrues when the claimant in fact knew or reasonably should have known of the wrong." *Poffenberger v. Risser,* 431 A.2d 677, 680 (Md. 1981). In contract cases, the statute of limitations generally "begins to run from the date of the breach, for it is then that the cause of action accrues and becomes enforc[ea]ble." *Mayor and Council of Federalsburg v. Allied Contractors, Inc.*, 338 A.2d 275, 280 (Md. 1975) *cert. denied*, 423 U.S. 1017 (1975).  The

Maryland Wage Payment and Collection Law ("MWPC"), Md. Code Ann., Lab. & Empl. §§ 3-501-3-509 (1999), provides that a cause of action accrues two weeks after payment is due:

> [I]f an employer fails to pay an employee in accordance with § 3-502 or § 3-505 of this subtitle, after 2 weeks have elapsed from the date on which the employer is required to have paid the wages, the employee may bring an action against the employer to recover the unpaid wages.

§ 3-507.1(a). Thus, a claim under the MWPC must be filed within three years and two weeks from the date on which the employer should have paid the wage. *Higgins v. Food Lion, Inc.*, No. Civ. A. AW00CV2617, 2001 WL 77696, at *4 (D.Md. Jan. 23, 2001).

Plaintiff's employment agreement[4] ("commission policy") provides that as an account executive, Plaintiff will receive a base salary plus a commission on each new software contract attributable to Plaintiff.   Paper no. 8, Ex. 3.   Because commissions were paid "monthly on Software License Sales that have been collected from the prior month," Plaintiff would receive his commission in the month after the client paid its licensing fees.   Paper no. 8, Ex. 3, at 4; Paper no. 8, at 4. If employment is terminated:

> [T]he Company will pay commissions on all contracts attributable to the Account Executive as defined herein that are signed in accordance with the terms and conditions defined herein, on or before the Account

--------------------

[4] Plaintiff signed two commission policies, in 2000 and 2001. The agreements are virtually identical, particularly the portions relevant to Plaintiff's Complaint and Defendant's Motion to Dismiss.   The only noteworthy difference is a statement added to  the 2001 policy that:

> In the event that any provision relating to the time period or scope of a restriction shall be declared by a court of competent jurisdiction to exceed the maximum time period or scope such court deems reasonable and enforceable, then the time period or scope of the restriction deemed reasonable and enforceable by the court shall become and shall thereafter be the maximum time period or the applicable scope of the restriction.

The two policies will be referred to collectively as "commission policy."

> Executive's termination date, based on the
> following conditions:
>
> a. The Company will pay commissions as
> defined above for a period of 6 Months
> following the termination of the Account
> Executive. *After 6 months the company will
> not be responsible for any additional
> compensation, unless otherwise agreed upon,
> to the Account Executive.*

Paper no. 8, Ex. 3, at 5-6 (emphasis added)(hereinafter "post

employment commission clause").

For claims based on the MWPC, Defendant calculates the

statute of limitations two ways: counting from the date that

Plaintiff's employment ceased (March 19, 2001) and in the

alternative, applying the post employment commission clause.

First, Defendant contends that because Plaintiff left

Defendant's employment on March 19, 2001, Plaintiff should have

filed his claim for commissions owed during his employment by

April 2, 2004, which is three years plus the two weeks provided

for under § 3-507.1(a). Paper no. 8, at 9.  Second, Defendant

argues that Plaintiff should have filed his claim for post

employment commissions by November 14, 2004, based on the post

employment commission clause. This date takes into consideration

the one-month lag time in paying a commission after a client

pays its fees, as well as the three-year statute of limitations

and the two weeks provided under the statute.  Paper no. 8, at

10.  Because Plaintiff did not file suit until January 11, 2005,

11

Defendant asserts that all of his claims under the MWPC are barred by the statute of limitations. Similarly, it argues that Plaintiff's claims based on breach of contract are also time barred. Plaintiff asserts that he is owed commissions for software licenses because additional sales invoices have been paid since his employment terminated (and since November 1, 2001), and those claims are within the statute of limitations. As discussed more fully later, Plaintiff contends that he is owed commissions regardless of when Defendant received the payments because the six month limit in his contract is void as against public policy.

The complaint itself does not contain any dates on which Plaintiff contends he should have been paid and thus does not clearly show that the statute of limitations has run, nor does reference to the contracts, especially when one considers Plaintiff's public policy argument. To the extent that Plaintiff is seeking commissions that should have been paid within the last three years (breach of contract) or for payments due within the last three years and two weeks (violation of the MWPC), Defendant's motion to dismiss is denied. To the extent that Plaintiff may be seeking commissions that should have been paid to him more than three years or three years and two weeks before his suit was filed, depending on the claim, Defendant's

12

motion to dismiss based on the statute of limitations is granted.[5]

## B.    Motion for Summary Judgment

Defendant argues that under the contract, Plaintiff is not entitled to commissions on sales collected after September 23, 2001.  Paper no. 8, at 10-11.  Relying on the MWPC, Plaintiff counters that Defendant is liable for commissions collected after September 23, 2001,[6] because the post employment commission clause is void as against public policy under Maryland law. Paper no. 13, at 5.

The primary purpose of the MWPC is "to provide a vehicle for employees to collect, and an incentive for employers to pay, back wages." *Battaglia v. Clinical Perfusionists*, 658 A.2d 680, 686 (Md. 1995).  The MWPC's definition of wage includes a

---

[5]  The exact date on which the statute of limitations began running is difficult to determine because the papers submitted do not specify the date on which commissions were paid in December.  Plaintiff argues that for sales collected in November 2001, Defendant would have paid the commission by the end of December 2001, so Plaintiff's claim under the MWPC with respect to November collections is preserved.  Paper no. 13, at 7-8. Conceivably, Defendant could have paid a November commission by December 15, 2001.  In that case, Plaintiff's claim would be time barred because the statute of limitations would have expired December 29, 2004.

[6] As noted above, claims for commissions due before December 28, 2001, for violations of the MWPC, and January 11, 2002, for breach of contract claims, are barred by the statute of limitations.

13

commission.[7]   § 3-501(c)(2)(ii).   Section 3-502[8] generally

---

[7] In its motion to dismiss, Defendant briefly suggests that Plaintiff's commissions are not "wages" within the MWPC's definition, but does not provide argument to contradict the plain language of the statute. Paper no. 8, at 7. *See Medex v. McCabe*, 811 A.2d 297, 302 (Md. 2002)("Commissions are clearly within the scope of the Act..."); *Admiral Mortgage, Inc. v. Cooper*, 745 A.2d 1026, 1029 (Md. 2000) ("[T]he term 'wage' includes a commission."); *Magee v. DanSources Technical Servs., Inc.*, 769 A.2d 231, 258 (Md.App. 2001) ("Commissions are wages within the scope of the Act.").

[8] The statute provides:
§ 3-502. Payment of wage.
(a)(1) Each employer:
(i) shall set regular pay periods;  and
(ii) except as provided in paragraph (2) of this subsection, shall pay each employee at least once in every 2 weeks or twice in each month.
(2) An employer may pay an administrative, executive, or professional employee less frequently than required under paragraph (1)(ii) of this subsection.
(b) If the regular payday of an employee is a nonworkday, an employer shall pay the employee on the preceding workday.
(c) Each employer shall pay a wage:
(1) in United States currency;  or
(2) by a check that, on demand, is convertible at face value into United States currency.
(d) This section does not prohibit the:
(1) direct deposit of the wage of an employee into a personal bank account of the employee in accordance with an authorization of the employee;  or
(2) Credit of the wage of an employee to a debit card or card account from which the employee is able to access the funds through withdrawal, purchase, or transfer if:
(i) Authorized by the employee;  and
(ii)Any fees applicable to the debit
(continued...)

14

requires employers to set regular pay periods.[9] Section 3-505 addresses termination of employment and provides that "[e]ach employer shall pay an employee or the authorized representative of an employee all wages due for work that the employee performed before the termination of employment, on or before the day on which the employee would have been paid the wages if the employment had not been terminated." This section is "worded broadly to encompass all terminated employees without regard to the regularity or length of that employee's pay period." *Balt. Harbor Charters, Ltd. v. Ayd*, 759 A.2d 1091, 1101 (Md.App. 2000).

The Court of Appeals has held that when employment terminates, an employer may not refuse to pay wages, including financial incentives such as bonuses and commissions. "[W]here an employee earns wages under the Act, the employer must pay them, regardless of the ensuing termination of the employee."

---

[8](...continued)
    card or card account are disclosed to the employee in writing in at least 12 point font.

[9] Defendant states that Plaintiff's complaint contains no allegations implicating § 3-502. Paper no. 8, at 7. However, the reading of one section "must be construed in the context of the entire statutory scheme of the Wage Payment and Collection Law." *See Medex*, 811 A.2d at 303 (citing *Whiting-Turner Contracting Co. v. Fitzpatrick*, 783 A.2d 667, 671 (Md. 2001)).

*Medex,* 811 A.2d at 304.   The Court of Appeals has explained that:

> [W]hat is due an employee who terminates employment with an employer are wages for work performed before termination, or all compensation due to the employee as a result of employment including any remuneration, other than salary, that is promised in exchange for the employee's work.

*Whiting-Turner*, 783 A.2d at 671.   An employer may not use contractual language "to eliminate the requirement and public policy that employees have a right to be compensated for their efforts." *Medex,* 811 A.2d at 304.[10]

Maryland courts have applied the MWPC to situations where wages are not payable until after the employment relationship has terminated.   *See e.g. Medex*, 811 A.2d at 304; *Admiral Mortgage*, 745 A.2d at 1029; Magee, 769 A.2d at 258; *Stevenson v. Branch Banking and Trust Corp.,* 861 A.2d 735, 749 (Md.App. 2004).   In *Medex*, the Court of Appeals held that an employer could not refuse to pay commissions that an employee earned, solely because the employee no longer worked for the employer, even if that condition is part of the employment agreement.   The plaintiff, Timothy J. McCabe, was a sales representative for

_____

[10]   *Medex* was decided by the Court of Appeals on November 14, 2002, more than a year and a half after Plaintiff left employment with Defendant.

16

Medex, a medical supplies manufacturer.  McCabe earned a base
salary plus incentive fees that were paid out under a series of
incentive compensation plans.  *Medex*, 811 A.2d at 300.  Under
the plan, "some incentive fees 'begin to earn' at meeting 80% of
a target goal, while another 'incentive begins' upon the sale of
certain goods." *Medex,* 811 A.2d at 302-03.  The incentive fees
were part of the employee's "'Total Target Cash Compensation'...
and were supplemental to the fixed salary as a combined measure
of compensation." *Medex,* 811 A.2d at 306.  The payment of
incentive fees was contingent upon the employee "being employed
at the time of actual payment." *Medex,* 811 A.2d at 301.  McCabe
resigned on January 31, 2000.  Because incentive fees were not
awarded until March 31, 2000, Medex refused to pay McCabe the
fees. *Medex,* 811 A.2d at 300-01.

The Court of Appeals held that the incentive fees were
essentially commissions, which are included under the definition
of wages under the MWPC. *Medex,* 811 A.2d at 302.  After
reviewing the language of the MWPC and prior case law, the court
declared that "an employee's right to compensation vests when
the employee does everything that is required to earn the
wages." *Medex,* 811 A.2d at 304.  "A contract that necessitates
the deprivation of some portion of the fees worked for by the
employee contravenes the purposes of the Act." *Id.*  McCabe was

entitled to recover the incentive fees under the MWPC, the court held, because McCabe had performed all the work necessary to earn the fees and Medex had registered the sales. *Medex,* 811 A.2d at 301-03.   The provision requiring McCabe to be an employee on the date that the incentive fees were paid was against public policy because a "contract that necessitates the deprivation of some portion of the fees worked for by the employee contravenes the purposes of the [MWPC]." *Medex,* 811 A.2d at 305.   The court also distinguished an earlier case, *Whiting-Turner*, in which a former employee argued that he was entitled to a bonus share of his employer's profits.   In that case, the *Medix* court noted, the offer of profit sharing was not part of the employee's wages, but was made to entice the employee into staying.

   In the present case, the parties do not dispute the terms of the commission policy.   Under the policy, Plaintiff received a salary plus commissions.   The base salary is paid to account executives "to provide a consistent, reliable income stream by which they can manage their basic financial responsibilities. The base salary is intended to compensate an Account Executive for those direct activities which may be required, but for which no commission is associated."   Paper no. 8, Ex. 3.   Those activities include making "goodwill" calls on the customer base,

18

complying with reporting requirements, and managing activities needed to achieve the designated quota. *Id.* The commission plan is aimed at motivating and rewarding account executives "for their efforts in achieving annual sales goals." Account executives received commissions for software licenses sold, but "[s]ervices, such as Training, Maintenance, Installation, Project Management, and customized software will not be commissionable." *Id.* An account executive may also earn a cash bonus of $5,000 for earning 100% of his or her territory quota. Commissions are "paid monthly on Software License Sales that have been collected from the prior month." *Id.*

Under the commission policy, generating leads and landing new contracts appear to be an account executive's primary responsibilities, and his or her duties appear to end once the contract is signed. The five areas of responsibility are "General," "Lead Generation and Follow up," "Achieving Your Quota," "Prospect Qualification," and "Turn Prospects into Signed Contracts." *Id.* Among the ten bullet points under the heading "Turn Prospects into Signed Contracts," eight deal with helping prospects develop proposals, one requires account executives to "[f]ollow up with the customer on a regular basis until the system is fully implemented and the customer is

referencable," and the last deals with follow up visits for recurring sales. Paper no. 8, Ex. 3.

Commissions are calculated by using a base price, and the commission amount depends on how much the actual contract exceeds or falls below the base price. Paper no. 8, Ex. 3, at 4. Commissions are paid in the month after the license sales are collected. *Id.* The policy also states that if two or more account executives are substantially involved in the "solicitation and consummation of an order or contract, and this is done so at the request of their manager," the manager will split the commission based on each account executive's role. "In no event will [Defendant] pay more than one commission on an order or contract." *Id.* at 5.

The parties agree that Plaintiff could not receive a commission unless the customer paid its contract. Paper no. 16, at 5; Paper no. 13, at 6. They agree that when Plaintiff's employment terminated on March 23, 2001, his net "commission balance" was $55,404.74. Paper no. 8, Ex. 5. The commission balance represents the potential income that Plaintiff would receive if Defendant collected payments on the sales contracts attributable to Plaintiff. They also agree that after Plaintiff's employment terminated, Defendant paid Plaintiff commissions totaling $10,357.19. Paper no. 8, Ex. 3; Paper no.

15.   They disagree on whether Defendant owes Plaintiff the remaining commissions totaling $45,047.55.

Their disagreement hinges on the six-month limit on commissions and whether Plaintiff has a viable claim for contracts paid thereafter.  Plaintiff believes that Defendant collected payment on sales to one of his largest clients on or after November 1, 2001, which would have triggered Defendant's obligation to pay a commission in December 2001 or later.  Paper no. 13, Ex. 3.  Plaintiff argues that without allowing the case to proceed to discovery, it is impossible to state what payments are due to him.  Defendant has also raised the argument that the commissions are not "earned wages" as defined under Maryland law.

The post employment commission clause in Defendant's employment agreement that limits payment to six months may contravene Maryland's public policy as embodied in the MWPC, and would not be enforceable if the commissions are wages.  Like the employee in *Medex*, Plaintiff received both a base salary and a sales commission, which represented the employee's total compensation.  Like *Medix*, Plaintiff is seeking a specific sum of money that he claims was promised to him under his employment contract.  Plaintiff believes that at least one contract has been paid since November 2001 that would trigger Defendant's

obligation to pay a commission.  Plaintiff argues that he did all that was necessary on his part to earn the commission, although Defendant seeks to raise additional arguments that show more work was needed before Plaintiff's commission was due. Finally, the commission policy is dissimilar to the profit-sharing bonus in *Whiting-Turner*, which had not vested when the employee resigned.

On this record, Defendant has failed to show that it is entitled to summary judgment as a matter of law, and accordingly Defendant's Motion for Summary Judgment is denied.

## IV.  Conclusion

For the foregoing reasons, Plaintiff's claims based on the Maryland Wage Payment and Collection Law for unpaid commissions that were due on or after December 28, 2001, may proceed, and claims for unpaid commissions based on breach of contract due on or after January 11, 2002, may proceed.  Any claims arising prior to those dates are time barred.  A separate Order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge

September 1, 2005